IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ANNIE F. SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:09CV916-CSC |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**I.  Introduction.**

The plaintiff applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq., alleging that she was unable to work because of a disability. Her application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

pursuant to 42 U.S.C. §§ 405 (g) and 1383(c)(3).[2]  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that this case should be remanded to the Commissioner for further proceedings.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...

To make this determination[3] the Commissioner employs a five step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2] Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the United States Magistrate Judge.

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Ingram v. Comm. of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. The Issues

A. Introduction.  The plaintiff was 54 years old at the time of the hearing before the ALJ and has an 11th grade education. The plaintiff's prior work experience includes

---

[4] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

work as a poultry deboner. Following the administrative hearing, the ALJ concluded that the plaintiff has severe impairments of obesity and arthritis. Nonetheless, the ALJ concluded that the plaintiff was not disabled because the plaintiff has the residual functional capacity to perform light work.

 B. As stated by the plaintiff, the issues in this care are

  1. The Commissioner's decision should be reversed, because there is absolutely no support for the ALJ's Residual Functional Capacity (RFC) assessment as the record is devoid of any RFC assessments from any physicians whatsoever.

  2. The Commissioner's decision should be reversed, because the ALJ erred by failing to find Ms. Smith's transient ischemic attacks a severe impairment.

(Doc. # 13, at 7)

### III.  Residual Functional Capacity Assessment

 The plaintiff contends that in the absence of a residual functional capacity assessment by a physician, the ALJ's determination that the plaintiff can perform light work is not supported by substantial evidence. A person's "residual functional capacity (RFC) is the most . . . [a person] can still do despite . . . [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). An assessment of a person's "residual functional capacity [is] based on all the relevant evidence in . . . [the] case record." *Id.* The Commissioner's regulations spell out what evidence is considered in making this determination.

> Evidence we use to assess your residual functional capacity. We will assess your residual functional capacity based on all of the relevant medical and other evidence. In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity. (See

> § 404.1512(c).) However, before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources. (See §§ 404.1512(d) through (f).) We will consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations. (See § 404.1513.) We will also consider descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends, or other persons. (See paragraph (e) of this section and § 404.1529.)

20 C.F.R. § 404.1545(a)(3).

In short, under the Commissioner's regulations a residual functional capacity determination is made by the ALJ based on all of the evidence including medical evidence.

> However, the determination of the Plaintiff's residual functional capacity is an administrative finding reserved to the Commissioner and must be based upon all the relevant evidence such as medical signs and clinical findings, effects of treatment, medical source statements, and reports of daily activities. 20 C.F.R. 416.945(a); Social Security Ruling 96-5p, 61 Fed.Reg. 34471 (1996). The ALJ may reject a physical capacities evaluation if the totality of evidence supports a contrary finding. *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir.1987).

*Lewis v. Apfel,* 2000 WL 207018, 7 (S.D .Ala.,2000).

The plaintiff first saw Dr. Bish on June 15, 2007, at which time the plaintiff had no complaints of pain. Dr. Bish diagnosed the plaintiff with hypertension and arthritis, prescribing only over-the-counter pain medication for arthritis. (R. at 123) On September 6, 2007, the plaintiff was examined by a consulting physician, Dr. Banner. (R.

at 128) During this examination, the plaintiff told Dr. Banner she had "pain all over for greater than ten years . . . " *Id.* She also said she was uable to sit, stand or walk for prolonged periods and had increased pain with the use of her hands. *Id.* On examination, Dr. Banner found no motor weakness, no atrophy of any muscle group in any extremity, normal muscle tone and satisfactory fine and gross motions in both hands. *Id.* "Patient was able to button and unbutton clothing without difficulty." *Id.*

On January 2, 2008, the plaintiff was admitted to the hospital complaining of dizziness and numbness on the right side of her body. She was treated for transient ischemic attacks (TIA) with anticoagulants. (R. at 136) Doppler evaluations of her right and left carotid arteries showed "no evidence of flow-limiting stenosis . . . " (R. at 149) An MRI of the plaintiff's brain did disclose "[c]hanges consistent with a subacute right periventricular infract . . . " (R. at 150) An MRA of the plaintiff's brain was essentially normal, (R. at 152), as was an EEG. (R. at 153)

Dr. Bish saw the plaintiff on February 1, 2008 for a follow-up visit. At that time, the plaintiff was taking blood pressure medicine; Plavix, an antiplatelet drug used to prevent blood clots; and a statin for cholesterol control. Following the examination, Dr. Bish prescribed an additional medication for hypertension control.

In addition to the medical evidence, the ALJ considered the plaintiff's activities of daily living, noting that the plaintiff shops, does household chores, sweeps the lawn, cooks, goes to church and picks up trash. The ALJ found these activities to be "fairly

limited." In addition, the ALJ, while finding that the plaintiff had a condition which could be reasonably expected to produce pain, further found the medical evidence did not support a finding that her pain precluded work activity. This finding is wholly consistent with the medical evidence. The plaintiff uses only over-the-counter pain medicine and rarely complains of pain to her treating physician.

Unquestionably, the responsibility for assessing residual functional capacity belongs to the ALJ at the administrative law judge hearing level. 20 C.F.R. § 404.1546(c). But as noted, in making the residual functional capacity determination, the ALJ must properly consider *all* of the evidence before him. In this case, he did not.

### IV. Transient Ischemic Attacks

In early 2008, the plaintiff had a transient ischemic attack and was admitted to the hospital where she had an MRI, an MRA, and EEG and other tests. As already noted above, these tests confirmed a "subacute right periventricular infract." The plaintiff is apparently taking Plavix for this condition.

[A]n "impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d at 1031. "[T]he severity of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d

7

1544, 1547 (11th Cir. 1986).

At the hearing before the ALJ the plaintiff testified that if she were "hanging out some clothes, right, I'll get dizzy and have to set down. Be about to fall." (R. at 28) In response to other questions, the plaintiff reiterated, "Like if I do stuff, I get dizzy and I be about to fall. I just catch on and hold something. I need to sit down, just take a little break." In discussing the plaintiff's testimony about dizziness, this is what the ALJ said:

> Claimant alleges to have problems with dizziness. Hypertension is her only impairment that would sometimes cause vertigo. However, such vertigo is generally caused by very poorly controlled hypertension. In this case, the evidence reveals Claimant had been off her blood pressure medication for some time when Dr. Bish first examined her on June 15, 2007. (Exhibit 1F). Dr. Bish started her on medication and since that time, her blood pressure has been better controlled. Claimant even testified that it is well controlled.

(R. at 16)

The ALJ completely overlooks the subacute right periventricular infract which the plaintiff experienced in January 2008 when, ostensibly, her blood pressure was under control. Plainly, the episode which the plaintiff experienced and which caused her hospitalization was serious. Unfortunately, the record does not disclose whether it has continuing serious consequences. The ALJ's conclusion that hypertension could be the only cause of her dizziness is not supported in the record by any medical evidence.

## V. Conclusion

The court cannot find that the residual functional capacity determination by the ALJ is supported by substantial evidence because his own opinion demonstrates that he

8

did not properly consider all of the plaintiff's impairments. The ALJ found that the TIAs were non-severe, but as reflected above, the plaintiff testified that she gets dizzy to the extent that she feels like she may fall. The ALJ ascribes these episodes of dizziness to hypertension, but there is no evidence to support that conclusion. Indeed, the plaintiff's 2008 hospitalization was triggered by dizziness and numbness. The plaintiff testified that she continues to get dizzy, and as explained above, the ALJ ignored evidence that the infarct or TIA's may cause that condition, improperly speculating instead that only hypertension was the cause.

For the foregoing reasons, the court concludes that the Commissioner's decision must be reversed and this case remanded for further proceedings. On remand, the Commissioner must properly determine whether the plaintiff's neurological condition is a severe condition and, if so, determine the plaintiff's residual functional capacity including any limitations imposed by that condition.

A separate order will be entered.

Done this 27th day of September, 2010.

                                            /s/Charles S. Coody
                                            CHARLES S. COODY
                                            UNITED STATES MAGISTRATE JUDGE